IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO TORRES TALAVERA, *et al.*,

**Plaintiffs**,

v.

FORD MOTOR COMPANY, *et al.*,

**Defendants**.

**Civil No.** 12-1158 (FAB)

**OPINION AND ORDER**[1]

BESOSA, District Judge.

Before the Court is the motion to dismiss or impose other sanctions filed by defendant Ford Motor Company ("defendant Ford"), based on spoliation of evidence. (Docket No. 31.) Having considered defendant Ford's motion, (Docket No. 31); plaintiffs Roberto Torres-Talavera, Evelyn M. Jimenez-Garcia, and Aida Luz Talavera-Santiago's (collectively "plaintiffs") opposition, (Docket No. 42); defendant Ford's reply, (Docket No. 45); and plaintiffs' surreply, (Docket No. 48); the Court **DENIES** defendant Ford's motion for the reasons discussed below.

**I.   BACKGROUND**

  **A.   Procedural History**

On March 7, 2012, plaintiffs Roberto Torres-Talavera ("plaintiff Torres"), Evelyn M. Jimenez-Garcia ("plaintiff

---

[1] Katherine Hedges, a second-year student at the University of New Hampshire School of Law, assisted in the preparation of this Opinion and Order.

Civil No. 12-1158 (FAB)                                                    2

Jimenez"), the Conjugal Partnership composed of them, and Aida Luz Talavera-Santiago ("plaintiff Talavera") filed a complaint alleging products liability against defendant Ford and three John Doe defendants.  (Docket No. 1.)

On December 24, 2012, defendant Ford filed a motion to dismiss, or in the alternative, for the imposition of other sanctions.  (Docket Nos. 31-35.)  Defendant Ford has moved for dismissal of this action with prejudice, contending that its defense has been "substantially prejudiced" as a result of plaintiffs' failure to preserve the Ford Escort at issue.  (Docket No. 31 at pp. 1-2.)  Alternatively, if the suit is not dismissed, defendant Ford argues that other sanctions should be imposed on the plaintiffs for spoliation of evidence.  Id.  On January 15, 2013, plaintiffs filed an opposition, arguing that the destruction of the vehicle does not hamper defendant Ford's ability to defend itself.  (Docket No. 42.)  On January 28, 2013, defendant Ford replied to plaintiffs' opposition, contending that the available evidence in the case is not sufficient to prove with certainty many conditions at the time of the accident.  (Docket No. 45.)  On February 7, 2013, plaintiffs filed a surreply, arguing that their expert can determine the conditions defendant Ford listed from the available evidence.  (Docket No. 48.)

Civil No. 12-1158 (FAB)                                              3

### B.  Factual Background

On October 27, 2008, a vehicle struck from behind the 1998 Ford Escort that plaintiff Talavera was driving, while she was stopped at a traffic light on Road #29, Bayamon, Puerto Rico. (Docket No. 1 at p. 3.)  Plaintiff Talavera's one-year-old granddaughter ("Baby Sofia") was in a car seat in the back seat of the Ford Escort.  Id.  Baby Sofia suffered serious injuries from the impact, which resulted in her death one day later.  Id.  Plaintiff Talavera was knocked unconscious and also suffered serious injuries.  Id.

Plaintiffs allege that the driver's seat in the Ford Escort was defective.  (Docket No. 1 at p. 3.)  They contend that "the driver's seat failed and hit Baby Sofia, causing her serious bodily injuries, which ultimately caused her death."  Id.  Plaintiffs are seeking damages for Baby Sofia's "great amount of pain due to the trauma" and the "serious emotional and mental anguish" suffered by her parents and grandmother, as well as medical expenses.  Id. at pp. 4, 6.

## III. DISCUSSION

### A.  Spoliation

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  Perez v. Hyundai Motor Co., 440 F.Supp.2d 57, 61

Civil No. 12-1158 (FAB)                                                  4

(D.P.R. 2006) (quoting Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001)).  The duty to preserve material evidence arises prior to the start of litigation, when a party should reasonably know the evidence could be relevant to anticipated litigation.  Perez, 440 F.Supp.2d at 61.  Even if the plaintiff does not control the evidence, he or she has an obligation to notify a potential party of its possible destruction.  Id.; Perez-Velasco v. Suzuki Motor Co., Ltd., 266 F.Supp.2d 266, 268 (D.P.R. 2003).  Material evidence in a product liability claim such as this one includes the vehicle involved in the accident.  See Perez-Velasco, 266 F.Supp.2d at 268.

It is undisputed that plaintiffs failed to preserve the Ford Escort involved in this claim.  (See Docket No. 31 at p. 3; Docket No. 42 at p. 2.)  Plaintiff Talavera owned the Ford Escort when the accident happened, and, following the accident, she stored it in front of her home.  (Docket No. 31 at p. 3; Docket No. 42 at p. 2.)  Plaintiff Talavera stated that she had the vehicle removed[2] because "seeing said vehicle parked in front of her house aggravated her mental anguish."  (Docket No. 42 at p. 2.)  Plaintiff Talavera gave the Escort to a friend of the person who

---

[2] The contents of the motions fail to make clear exactly how long the vehicle remained in plaintiff Talavera's possession after its release from the police following the accident but prior to its disposal.  (See Docket No. 31 at p. 3.)

Civil No. 12-1158 (FAB)                                                   5

sold her a new car.[3]  (Docket No. 31 at p. 3.)  The current location of the vehicle is unknown.  Id.  Plaintiffs did not notify defendant Ford of the possible loss or destruction of the vehicle at the time of its disposal.  Id.  Plaintiff Talavera's husband removed the seats of the Ford Escort before its disposal, and he still retains them because he thought they were in good condition and could be sold or given away.  Id. at pp. 2, 4.  Plaintiffs have also preserved the car seat that Baby Sofia in which was riding at the time of the accident.  Id. at p. 4.

**B.  Sanctions**

    **1.  Standard**

If the Court finds the plaintiffs are responsible for spoliation, it may impose sanctions to prevent unfair prejudice to defendant Ford.  See Perez, 440 F.Supp.2d at 61.  "Sanctions for spoliation range from dismissal of the action, exclusion of evidence or testimony or instructing the jury on a negative inference to spoliation whereby jury may infer that party that destroyed evidence did so out of realization that it was unfavorable."  Southwire Co. v. Ramallo Bros. Printing Inc., No. 03-1100 (GAG), 2011 WL 2469943, at *4 (D.P.R. 2011) (quoting Perez, 440 F.Supp.2d at 62).  "[T]he district court has inherent power to exclude evidence that has been improperly altered or

---

[3] It is unclear from the pleadings whether the car was exchanged for a discount or other form of compensation.

Civil No. 12-1158 (FAB)                                                 6

damaged by a party where necessary to prevent the non-offending side from suffering unfair prejudice." Id. (quoting Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 28 (1st Cir. 1998)). The goals behind imposing sanctions are "to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." Collazo-Santiago, 149 F.3d at 29 (citing Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997))

When considering sanctions, the Court weighs the amount of prejudice to the non-offending party and the degree of fault of the offending party. Collazo-Santiago, 149 F.3d at 29. "'[B]ad faith or comparable bad motive' is not required for the court to exclude evidence in situations involving spoilation." Perez, 440 F.Supp.2d at 61 (citing Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 95 (1st Cir. 1999)). The type and severity of the sanction depends on the amount of prejudice to the opposing party. Perez, 440 F.Supp.2d at 61. Dismissing a case as a sanction for spoliation is an extreme remedy, and it is reserved for only the most egregious of situations. See Collazo-Santiago, 149 F.2d at 28; Perez, 440 F.Supp.2d at 62.

In a product liability case such as this one, whether the theory of causation is based on a manufacturing defect or a design defect impacts the seriousness of prejudice to the

Civil No. 12-1158 (FAB)                                                7

defense. See Perez-Velasco, 266 F.Supp.2d at 268-69. When a plaintiff's claim is based on a manufacturing defect, "'an inspection and evaluation of the specific item that caused the injury' is required to establish that the item was defectively manufactured, or to refute that theory." Id. at 269 (quoting Callazo-Santiago, 937 F.Supp. at 136). When a plaintiff's claim is based on a design defect, however, the "design defect, by definition, would be found in the entire run of the vehicle model in question." Bericochea-Cartagena v. Suzuki Motor Co., Ltd., 7 F.Supp.2d 109, 113 (D.P.R. 1998) (citing Collazo-Santiago, 937 F.Supp. at 136. In claims based on a design defect, therefore, spoliation of the vehicle is not as prejudicial as in manufacturing defect cases. See id.

### 2. Analysis

To determine what, if any, sanctions are appropriate, the Court first turns to whether plaintiff's lawsuit is a product liability claim based on a design defect or a manufacturing defect. It then analyzes whether, and to what extent, the spoliation prejudices defendant Ford.

#### a. Type of Product Liability

Defendant Ford argues that plaintiffs' claim is based on a manufacturing defect in the Ford Escort, and, therefore, it is prejudiced from mounting an adequate defense. (Docket No. 45 at pp. 7-8.) The Court finds, however, that plaintiffs frame the

claim as one based on a design defect. (Docket No. 42 at pp. 5-8.) Plaintiffs' complaint generally alleges that defendant Ford "designed, manufactured, marketed, promoted, sold and distributed the defective Ford Escort." (Docket No. 1 at p. 4.) The complaint further states that "[t]he seats of the Ford Escort were *defective* considering that they did not provide the stability and safety required to prevent secondary accidents within the vehicle's cabin in the event of a car crash." Id. (emphasis added). The Court's conclusion also rests on plaintiffs' indication that they intend to present evidence at trial based on experts' examination of an exemplar 1998 Ford Escort and the fact that the plaintiffs' offered defendant Ford access to the same vehicle for inspection. (Docket No. 42 at p. 5.) The complaint is replete with allegations against defendant Ford that use both the words "manufacture" and "design" collectively, (Docket No. 1), and, therefore, at this stage in the litigation, the Court assumes that it is possible plaintiffs are proceeding on a theory of design defect. If so, the spoliation of the Ford Escort is less prejudicial than if the plaintiffs were proceeding on a manufacturing defect theory.

      **b.    Availability of Additional Evidence to Resolve the Queries Left Open Due to Spoliation**

In addition to whether the case is based on a design defect or manufacturing defect, the amount of prejudice to defendant Ford depends on the availability of other evidence to resolve defendant Ford's questions. Once the Court determines if

Civil No. 12-1158 (FAB)                                                9

other evidence is sufficient to resolve defendant Ford's queries, it will examine what, if any, may be the proper sanction is in light of the amount of plaintiffs' culpability.

The Court considers whether other evidence is available to resolve the issues that the destroyed evidence allegedly would have clarified.  See Collazo-Santiago, 149 F.3d at 29 (finding that the court did not abuse its discretion when it declined to dismiss a design defect product liability complaint because witness testimony, photographs taken after the accident, and accident reconstruction could resolve the same inquiries as an inspection of the destroyed vehicle).  Defendant Ford contends that if it had access to plaintiff Talavera's Ford Escort, it would be able to:  (1) determine "with virtual scientific certainty" if Baby Sofia was properly restrained; (2) "properly reconstruct" the accident;[4] (3) determine the position and angle of the driver's seat at the moment of impact; and, (4) discover the cause of Baby Sofia's injuries based on "occupant contacts, blood components, and other tissue."  (Docket No. 31 at pp. 11-14.)

Plaintiffs dispute that the Ford Escort is necessary for adjudication of the lawsuit, or that defendant Ford is prejudiced in any way.  Whether Baby Sofia was properly

---

[4] Defendant Ford alleges that the investigating officers failed to reconstruct the accident formally, failed to evaluate the available physical evidence, and failed to take sufficient photographs of the accident scene.  (Docket No. 31 at p. 12.)

Civil No. 12-1158 (FAB)                                              10

restrained, for example, can still be determined without the entire vehicle because the car seat has been retained, and defendant Ford has the ability to inspect it for load marks and other tests. (Docket No. 42 at p. 10.)  Plaintiffs also contend that the testimony of plaintiff Talavera and plaintiff Torres will provide defendant Ford with any additional information it needs to determine whether Baby Sofia was properly restrained.  Id.  They further express that defendant Ford has access to the report prepared by an expert in the related criminal case and photographs of the accident, which are the same items plaintiffs' expert relied on when completing his accident reconstruction.  Id. at p. 11. Because the seats of the vehicle were preserved, moreover, plaintiffs allege that defendant Ford can still determine key issues, like injury causation and the angle of the driver's seat. Id. at p. 12.  Additionally, medical testimony as to Baby Sofia's injuries, as well as an autopsy report, are available to determine the cause of her injuries and death.  Id. at pp. 13-14.

          The Court finds from both parties' motions that defendant Ford and plaintiffs all have access to the same sufficient information to prove their cases.  Assuming that the plaintiffs are proceeding on a design defect cause of action, prejudice to defendant Ford is less likely to result simply because the Ford Escort was disposed of before this case was filed.  Other evidence is available to resolve the questions that defendant Ford

Civil No. 12-1158 (FAB)                                              11

would allegedly use the vehicle to answer, and, therefore, sanctions are not appropriate at this time. See Collazo-Santiago, 149 F.3d at 29 (finding that in a design defect case, the issues the defense insisted could only be answered by the destroyed vehicle could sufficiently be answered through photographs, testimony of the plaintiff and others involved in the accident, and accident reconstruction); see also Bericochea-Cartagena, 7 F.Supp.2d at 113 (finding that the destroyed vehicle was not necessary to prove a design defect case when expert testimony, testimony of witnesses, police reports, photographs, and claims adjustor reports were presented to prove causation).

    Because dismissal of the action is an extreme remedy for spoilation, it is not appropriate where no evidence exists that a plaintiff disposed of the vehicle maliciously and where a defendant has not shown marked prejudice. See Collazo-Santiago, 149 F.2d at 28; Perez, 440 F.Supp.2d at 62.  In cases of spoliation such as this one, the most common sanction is exclusion of testimony of parties who had a chance to view the vehicle before its spoliation. See, e.g., Trull, 187 F.3d at 92 (affirming the district court's exclusion of lay and expert testimony of anyone who had examined the vehicle after an accident, when the defendant did not have the same opportunity prior to the spoliation of the vehicle in a design defect case); Perez-Velasco, 266 F.Supp.2d at 269 (finding exclusion of the testimony of the plaintiff's

expert, who had examined the vehicle prior to destruction, as the appropriate remedy for negligent spoliation in a manufacturing defect case).  Other courts have granted the defense a jury instruction that "permit[s] the jury to infer that the party that destroyed potentially relevant evidence [did] so out of a realization that the [evidence was] unfavorable" when there is significant prejudice to the defense. See, e.g., Vazquez-Corales, 172 F.R.D. at 15 (internal quotations omitted) (finding that the jury instruction sanction was appropriate, in a case depending on whether a pin was present in the tractor trailer during the crash, when plaintiffs' reckless disregard for their duty to preserve evidence included a failure to mention the vehicle had been sold while parties were negotiating times for inspection).

When the chance of prejudice to the defense is small and the plaintiffs appear to have acted less than maliciously, however, courts typically do not impose sanctions. See, e.g., Collazo-Santiago, 149 F.3d at 29 (upholding the denial of defendant's motion to dismiss as a sanction for spoliation in a design defect case where the insurer sold the car in question at public auction because of the low prejudice to the defense); Perez, 440 F.Supp.2d at 64-66 (finding that in a manufacturing defect claim, where the vehicle in question was sold by the insurer and the resulting spoliation was in part due to the defendant delaying inspections, no sanction was appropriate); Bericochea-Cartagena,

Civil No. 12-1158 (FAB)                                          13

7 F.Supp.2d at 113-14 (denying summary judgment as a sanction in a design defect case because sufficient evidence to present a *prima facie* case existed without the vehicle salvage, which the plaintiffs had rejected delivery of due to emotional distress).

The Court finds that sanctions for spoliation are inappropriate at this time. Both parties' motions indicate that defendant Ford's and plaintiffs' experts have access to the same information for preparing their reports and testimony. Additionally, because the Court assumes at this time that plaintiffs may be proceeding primarily with a design defect cause of action, an exemplar vehicle may be sufficient to present a defense. It also appears that the issues for which defendant Ford contends it needs the vehicle may be answered by the preserved seats and car seat from plaintiff Talavera's Escort, as well as photographs, testimony, and evidence from the criminal case arising from the same incident. Thus, the prejudice of the spoliation to defendant Ford is limited.

While bad faith is not necessary to prove culpability for spoliation, the Court has no basis for determining that plaintiffs disposed of the car for a malicious purpose. The plaintiffs state that they were upset by the constant reminder of the loss of Baby Sofia while the vehicle sat in the yard. Additionally, plaintiffs did take precautionary steps to save evidence, such as preserving the car seat and other seats. The

Civil No. 12-1158 (FAB)                                                14

Court, therefore, declines to find that plaintiffs acted maliciously in disposing of the Ford Escort.  If during pretrial proceedings or even during the trial, however, plaintiffs seek to present evidence from the examination of the car prior to its disposal, or if they seek to base the issue of causation on manufacturing defects, the Court may revisit the issue of sanctions.  See Vasquez-Corales, 172 F.R.D. at 15.  Accordingly, the Court **DENIES** defendant Ford's motion to dismiss or impose other sanctions.

**IV. CONCLUSION**

For the reasons expressed above, the Court **DENIES** defendant's motion to dismiss or impose sanctions.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 20, 2013.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE